[No. 25050. Department One. August 13, 1934.]

ALEXANDER ANTHONY, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*Albert H. Solomon,* for appellant.

*The Attorney General* and *Browder Brown, Assistant,* for respondent.

MITCHELL, J.—Mrs. Tillie Anthony, while engaged in extrahazardous employment, received an injury to her left knee September, 1931. She and her husband, Alexander Anthony, at that time had three minor children. August 10, 1932, she gave birth to a fourth child. Subsequent to her injury, she received from the accident fund compensation for herself and minor

[1]Reported in 35 P. (2d) 54.

children. She died on August 28, 1932, from "meningitis following child birth," according to the medical certificate of death.

After her death, Alexander Anthony, as widower, who was not an invalid, made a claim for compensation for himself and four minor children. The claim was rejected by order of the supervisor of industrial insurance on December 30, 1932,

". . . for the reason that death was not a result of the injury of September 5, 1931, and for the further reason that the act does not provide for payment of pension to a widower who is not an invalid."

A rehearing before the joint board of the department of labor and industries was granted by an order dated July 25, 1933, and upon that hearing an order was entered "that the action of the supervisor in rejecting the claim for pension be sustained."

An appeal was taken to the superior court, where, upon a hearing, judgment was entered, upon the record and the court's findings and conclusions that the order of the joint board of the department of labor and industries sustaining the action of the supervisor be in all things sustained and affirmed. From that judgment, Alexander Anthony has appealed.

The appellant relies upon Rem. Rev. Stat., § 7679, which provides that, in case of death of a workman injured in the course of his employment, his family or dependents shall receive out of the accident fund compensation according to the schedule prescribed therein:

". . . (a) *Where death results from the injury* . . . (1) If the workman leaves a widow or invalid widower, a monthly payment of thirty-five dollars ($35.00) shall be made throughout the life of the surviving spouse, to cease at the end of the month in which remarriage shall occur, and the surviving spouse shall also receive per month for each child of the de-

ceased under the age of sixteen years at the time any monthly payment is due the following payments: . . ." (Italics ours.)

There was considerable testimony introduced before the joint board, but no new testimony in the hearing in the superior court.

It is impracticable to set out the testimony in detail. In a general way, and manifestly as the joint board saw it as indicated by its findings, it was, in substance, about as follows: Meningitis originates from a number of causes, probably most frequently from infection. If from infection, there will be organisms found in the blood which cannot be reasonably ascertained or discovered without a *post mortem* examination. In this case, there was no *post mortem* examination.

Dr. William A. Millington was Mrs. Anthony's attending physician from the time of her injury until a few weeks prior to her death. He testified that, when he first examined her upon her being injured, she was at that time suffering from marked anaemia, and three days after the injury her hemoglobin count was 50%; that he diagnosed her injury as a detached semilunar cartilage, and treated her in a conservative manner with bandaging, which proved ineffective, and that he operated on her for removal of the semilunar cartilage January 9, 1932, at which time she had a 40% hemoglobin, and that, when she was discharged from the hospital February 7 after the operation, her temperature was 99.4, and that her complaints of headache could have been due to her anaemia. On cross-examination, he testified that there was no infection in the knee at any time, except possibly once between February 3 and February 8, 1932, when there was some seropustular discharge on the bandage on her knee, after which time there was no further trouble or indication

of that sort, and that she could not have persisted with infection from that time until August, 1932, without increasing, marked disability of the knee, with high fever, which was not the case.

Alexander Anthony, the appellant, wholly unacquainted with the practice of medicine, testified that, on two different occasions after February, 1932, he was present and observed Dr. Millington's treatments, at which time there was pus infection in the knee. He admitted that he was not much acquainted with such conditions. He further stated, under cross-examination, that, after his wife left the Harborview Hospital after child-birth, she looked fine, had no pains of any character, was taken home Saturday, August 20, and the next day developed a stroke of paralysis.

Dr. A. C. Jordan, superintendent of the Harborview Hospital, testifying not from personal knowledge but from the records of the hospital, the entries in which in this respect were in no way identified by the person or persons making the entries, said that Mrs. Anthony died from meningitis, but that no organisms were found.

Dr. Atkins, of the Harborview staff, testified that Mrs. Anthony died from septic meningitis, as shown by the records of the hospital, which, it appears, were not made by him, but admitted, on cross-examination, that, in July, 1932, upon her going to the hospital expecting at that time to be confined, he examined her thoroughly for an hour and found no evidence of septic infection present in her left knee, or at all, and that she was in good physical condition; he further testified that she could have died from septic embolism caused by and following child birth, and that a *post mortem* examination would be necessary to accurately determine the cause of death.

Dr. Nathan K. Rickles testified as an expert on hypothetical questions, framed rather favorably to the appellant as to the facts involved, that there was a presumption that there was an infection following the operation in the removal of the semilunar cartilage, and that it so infected the knee as to likely cause the meningitis that caused the death.

From the facts, the joint board concluded that it did not satisfactorily appear that the cause of Mrs. Anthony's death was in any way attributed to the accidental injury of September 5, 1931, and that the action of the supervisor in rejecting the dependency claim of the husband for himself and minor children was correct.

There was much in the testimony, in addition to what has already been stated, that fortifies and strengthens the outline of it given above, and justified the joint board and the trial court in reaching the conclusions they did.

Under the statute, it is provided that, in all review proceedings from the joint board, the decision of the department shall be *prima facie* correct, and the burden of proof shall be on the party attacking the same. In this case, upon a full and careful consideration of the evidence, we are satisfied that the burden imposed upon the appellant in order to reverse the order of the joint board has not been met. The weight of the evidence is clearly in favor of the findings and conclusions of the joint board.

In so deciding, we also take into consideration that portion of the record prior to the testimony on the rehearing before the joint board, which, appellant argues, must be done under the statute.

Our conclusion upon the facts of the case, thus expressed, makes it unnecessary to discuss the question

of law as to whether or not appellant would otherwise be entitled to compensation for his minor children, since he is not an invalid widower.

Judgment affirmed.

BEALS, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.